IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**MARY JESSICA PAGAN-GARCIA, et al.,**

Plaintiffs,

v.

**LUZ ELINA RODRIGUEZ, et al.,**

Defendants.

Civil No. 14-1385 (DRD)

## OPINION AND ORDER

Plaintiffs Mary Jessica Pagan-Garcia, Luz Irizarry-Maldonado, Ciara Ramos-Torres, Yolanda Santiago, Carmen Caba-Virola and Daisy Irizarry-Hernandez (collectively, "Plaintiffs") filed an *Amended Complaint* on June 6, 2014 (Docket No. 5) against Defendants Luz Elina Rodríguez, Jorge Rivera-Hernández, Puerto Rico Department of Health, National Building Maintenance Corp., Management Consultants and Computer Services, Laura Tricoche, Blanca Rodríguez, Edwin Carmona and Associates, Edwin Carmona and Genesis Security (collectively, "Defendants"), all in their official and personal capacities, alleging political discrimination.[1] Plaintiffs bring this action under Section 1983 of the Civil Rights Act, 42 U.S.C. § 1983, alleging violations of the First and Fourteenth Amendments of the United States Constitution; Puerto Rico Law No. 100 of 1959, 29 L.P.R.A. § 146, *et seq.*; Puerto Rico Law 80 of 1976, 29 L.P.R.A. § 185a, *et seq.*; Articles 1802 and 1803 of the Civil Code, 31 L.P.R.A. §5141-5142; and Sections 1, 2, 4,

---

[1] On January 20, 2015, the Court entered a *Partial Judgment* (Docket No. 75) dismissing Plaintiffs' claims against Defendants Management Consultants and Computer Services, Laura Tricoche and Blanca Rodríguez without prejudice.

1

6, and 7 of Article II of the Constitution of the Commonwealth of Puerto Rico.[2]

## I.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND[3]

Plaintiffs worked at the Center for Diagnostic Treatment of Adjuntas, Puerto Rico ("CDT"), performing non-managerial functions, before being discharged or transferred.  Plaintiffs were all employed by Private Contractors,[4] who provide essential services, such as nursing, billing, security, and maintenance, at the CDT.

Plaintiffs are all affiliated with the New Progressive Party ("NPP") and actively participated in the November 2012 elections. According to Plaintiffs, their political ideologies were well known to all Defendants.

Defendant Luz Elina Rodríguez works at the Department of Health as a Regional Director, and serves as Defendant Jorge Rivera-Hernández's immediate supervisor.  Defendant Rivera-Hernández was named Administrator of the CDT in the aftermath of the 2012 General Elections, a position he previously held following the 2000 General Elections.

Plaintiffs claim that, immediately after the results of the November 6, 2012 general election, they were subjected to political

---

[2]  Plaintiffs' claims arising under the laws of Puerto Rico are attached to the instant case via the exercise of the Court's supplemental jurisdiction pursuant to 28 U.S.C § 1367.

[3]  The facts outlined below are neither exhaustive nor indicative of all the factual allegations set forth in the complaint.  The facts, as outlined, simply relate to the arguments set forth in the pending motions to dismiss.

[4]  The Private Contractors are Defendants National Building Maintenance Corp. ("NBM"), Management Consultants and Computer Services ("MCCS"), Edwin Cardona & Associates ("ECA"), and Genesis Security.

harassment at the hands of Defendant Rivera-Hernández, who openly spoke about making "NPP heads roll." Defendant Rivera-Hernández repeatedly threatened NPP affiliated employees by warning them that they would be fired and replaced with members of the Popular Democratic Party ("PDP").

Defendant Rivera-Hernández's threats became a reality in June/July 2013, when Plaintiffs were either discharged from their employment without just cause or transferred to inferior positions. The Private Contractors immediately replaced Plaintiffs with individuals affiliated with the PDP and informed several Plaintiffs that they had been terminated at Defendant Rivera-Hernández's request, who ordered that PDP affiliated individuals be hired in their place.[5]

Following Plaintiffs' terminations and/or transfers, Plaintiff Pagán-García visited the office of the Department of Health's Regional Director, Defendant Luz Elina Rodríguez, to complain about Defendant Rivera-Hernández's conduct and to seek Plaintiffs' reinstatement. After Plaintiff Pagán-García's provided a detailed explanation of the events in question, Defendant Rodríguez indicated that she would not do anything about the layoffs because Defendant Rivera-Hernández was an important figure within the PDP.

On November 14, 2014, Defendants Puerto Rico Department of Health and Luz Elina Rodríguez filed a *Partial Motion to Dismiss* (Docket No. 48). Therein, Defendant Rodríguez argues, *inter alias*, that Plaintiffs failed to establish that she participated in the alleged

---

[5] It is worth noting that the Private Contractors work on a contractual basis with the Department of Health. Hence, a failure on their part to accommodate Defendant Rivera-Hernández's requests could potentially result in the non-renewal of their services contracts.

adverse employment action, as the facts demonstrate that Plaintiffs had already been removed from their positions when Defendant Rodríguez became aware of the purported discriminatory conduct. Additionally, Defendant Rodríguez avers that Plaintiffs' due process claim fails as a matter of law, as Plaintiffs were not employees of the Puerto Rico Department of Health. Furthermore, Defendants accentuate that all claims against the Department of Health and the individual Defendants in their official capacity for monetary damages are barred by the Eleventh Amendment. Lastly, Defendant Rodríguez contends that she is entitled to qualified immunity, as the evidence fails to establish a violation of a statutory and/or constitutional right as a result of her conduct.

On December 22, 2014, Plaintiffs filed a *Consolidated Response in Opposition to the Motions to Dismiss at Dockets 36 and 48* (Docket No. 64) asserting that Defendant Rodríguez subjected Plaintiffs to adverse employment actions when she failed to rehire them after being confronted with evidence surrounding their unconstitutional terminations. In sum, Plaintiffs argue that Defendant Rodríguez condoned Defendant Rivera-Hernández's discriminatory conduct. Furthermore, Plaintiffs argue that Defendant Rodríguez was well-aware of their political affiliations and that their Due Process claims must stand, as Defendant Rivera-Hernández utilized the contractual relationship between the Department of Health and the Private Contractors to Plaintiffs' detriment. Additionally, Plaintiffs accentuate that Defendant Rodríguez is not entitled to qualified immunity given that her conduct violated Plaintiffs' known

4

constitutional rights.  Lastly, Plaintiffs clarify that they are not seeking monetary damages against the government defendants in their official capacity, only injunctive relief.

On February 18, 2015, Defendants Edwin Carmona and Edwin Carmona & Associates (collectively, "Carmona Defendants") filed a *Motion for Joinder* (Docket No. 77) regarding the *Motion to Dismiss* filed at Docket Entry 36.  In essence, the Carmona Defendants seek dismissal of Plaintiffs' Fourteenth Amendment, Law 80, and Articles 1802 and 1803 claims.

On March 9, 2015, Plaintiffs filed a *Response in Opposition to Motion to Dismiss Filed by Co-Defendants Edwin Carmona and Edwin Carmona & Associates* (Docket No. 79) arguing that Plaintiffs Ciara Ramos-Torres and Yolanda Santiago-Beltrán were prematurely terminated by the Carmona Defendants at the request of Defendant Rivera-Hernández.  Plaintiffs aver that the Carmona Defendants assisted the new PDP administration in firing NPP affiliated employees in order to maintain their contracts with the Puerto Rico Department of Health.  However, Plaintiffs concede that their Articles 1802 and 1803 claims should be dismissed.

## II. STANDARD OF REVIEW FOR MOTIONS TO DISMISS

Federal Rule of Civil Procedure 8(a) requires plaintiffs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Under *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007), a plaintiff must "provide the grounds of his entitlement [with] more than labels and conclusions."  *See Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12

(1st Cir. 2011) ("in order to 'show' an entitlement to relief a complaint must contain enough factual material 'to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).')(quoting *Twombly*, 550 U.S. at 555) (citation omitted).  Thus, a plaintiff must, and is now required to, present allegations that "nudge [his] claims across the line from conceivable to plausible" in order to comply with the requirements of Rule 8(a).  *Id.* at 570; *see e.g. Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

When considering a motion to dismiss, the Court's inquiry occurs in a two-step process under the current context-based "plausibility" standard established by *Twombly*, 550 U.S. 544, and *Iqbal*, 556 U.S. 662. "Context based" means that a Plaintiff must allege sufficient facts that comply with the basic elements of the cause of action.  *See Iqbal*, 556 U.S. at 677-679 (concluding that plaintiff's complaint was factually insufficient to substantiate the required elements of a *Bivens* claim, leaving the complaint with only conclusory statements). First, the Court must "accept as true all of the allegations contained in a complaint[,]" discarding legal conclusions, conclusory statements and factually threadbare recitals of the elements of a cause of action.  *Iqbal*, 556 U.S. at 678.  "Yet we need not accept as true legal conclusions from the complaint or 'naked assertion[s]' devoid of 'further factual enhancement.'" *Maldonado v. Fontanes*, 568 F.3d 263, 268 (1st Cir. 2009) (quoting *Iqbal*, 556 U.S. 678) (quoting *Twombly*, 550 U.S. at 557).

Under the second step of the inquiry, the Court must determine whether, based upon all assertions that were not discarded under the first step of the inquiry, the complaint "states a plausible claim for relief." *Iqbal*, 556 U.S. 679.  This second step is "context-specific" and requires that the Court draw from its own "judicial experience and common sense" to decide whether a plaintiff has stated a claim upon which relief may be granted, or, conversely, whether dismissal under Rule 12(b)(6) is appropriate.  *Id.*

Thus, "[i]n order to survive a motion to dismiss, [a] plaintiff must allege sufficient facts to show that he has a plausible entitlement to relief." *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 41 (1st Cir. 2009).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  Furthermore, such inferences must be at least as plausible as any "obvious alternative explanation." *Id.* at 679-80 (citing *Twombly*, 550 U.S. at 567).  "A plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." *Ocasio-Hernandez*, 640 F.3d at 12, (citing *Iqbal*, 556 U.S. 679).

The First Circuit has cautioned against equating plausibility with an analysis of the likely success on the merits, affirming that the plausibility standard assumes "pleaded facts to be true and read in a plaintiff's favor" "even if seemingly incredible." *Sepúlveda-Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 30 (1st Cir. 2010)

(citing *Twombly*, 550 U.S. at 556); *Ocasio-Hernandez*, 640 F.3d at 12 (citing *Iqbal*, 556 U.S. 679); *see Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely.")(internal quotation marks omitted); *see Ocasio-Hernandez*, 640 F.3d at 12 (citing *Twombly*, 550 U.S. at 556)("[T]he court may not disregard properly pled factual allegations, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'"). Instead, the First Circuit has emphasized that "[t]he make-or-break standard . . . is that the combined allegations, taken as true, must state a plausible, [but] not a merely conceivable, case for relief." *Sepúlveda-Villarini*, 628 F.3d at 29. Additionally, a district court may not weigh evidence in deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See Massachusetts Delivery Ass'n v. Coakley*, 671 F.3d 33, 39 n. 6 (2012)(emphasizing that a primary difference between a motion to dismiss under Rule 12(b)(1) and Rule 12(b)(6) is that, under Rule 12(b)(1), a court may weigh the evidence and make factual determinations).

However, a complaint that rests on "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" will likely not survive a motion to dismiss. *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996). Similarly, unadorned factual assertions as to the elements of the cause of action are inadequate as well. *Penalbert-Rosa v. Fortuno-Burset*, 631 F.3d 592 (1st Cir. 2011). "Specific information, even if not in the form of admissible evidence, would likely be enough at [the motion to dismiss] stage; pure speculation is not." *Id.* at 596; *see Iqbal*, 556 U.S. at 681("To be

clear, we do not reject [] bald allegations on the ground that they are unrealistic or nonsensical. . . . It is the conclusory nature of [the] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); *see Mendez Internet Mgmt. Servs. v. Banco Santander de P.R.*, 621 F.3d 10, 14 (1st Cir. 2010) (The *Twombly* and *Iqbal* standards require District Courts to "screen[] out rhetoric masquerading as litigation."). However, merely parroting the elements of a cause of action is insufficient. *Ocasio-Hernandez*, 640 F.3d at 12 (citing *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 49 (1st Cir. 2009)).

The First Circuit recently outlined two considerations for district courts to note when analyzing a motion to dismiss. *García-Catalán v. United States*, 734 F.3d 100, 104 (1st Cir. 2013). First, a complaint modeled on Form 11 of the Appendix of the Federal Rules of Civil Procedure which contains sufficient facts to make the claim plausible is ordinarily enough to surpass the standard prescribed under *Twombly-Iqbal*. *Id.* at 104. Second, district courts should accord "some latitude" in cases where "[a] material part of the information needed is likely to be within the defendant's control." *Id.* (more latitude is appropriate in cases where "it cannot reasonably be expected that the [plaintiff], without the benefit of discovery, would have any information about" the event that gave rise to the alleged injury.)(internal citations and quotations omitted).

### III.  LEGAL ANALYSIS

### A. Section 1983 Claims

Section 1983 does not create any independent substantive rights; Section 1983 is only a procedural vehicle to vindicate constitutional and other federal statutory violations brought about by state actors. *See Baker v. McCollan,* 443 U.S. 137, 145, n.3 (1979)("Section 1983 . . . is not itself a source of substantive rights, but [merely provides] a method for vindicating federal rights elsewhere conferred . . . ."); *Albright v. Oliver*, 210 U.S. 266 (1994); *Lockhart-Bembery v. Sauro*, 498 F.3d 69, 74 (1st Cir. 2007); *Cruz-Erazo v. Rivera-Montañez*, 212 F.3d 617 (1st Cir. 2000). Section 1983 merely provides a mechanism to remedy for deprivations of rights that are federally enshrined elsewhere. *Oklahoma City v. Tuttle*, 471 U.S. 808 (1985).

Section 1983 provides:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

42 U.S.C. § 1983.

When assessing the imposition of liability under Section 1983, we must first ask "(1) whether the conduct complained of was committed by a person acting under the color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 558 (1st Cir. 1989)(citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)). Acting under color of state law requires that a "defendant in a § 1983 action have exercised

power possessed by virtue of state law and made possible only because wrongdoer is clothed with authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988)(internal citations and quotations omitted).

In the instant case, all of the facts alleged by Plaintiffs transpired under the umbrella of the Department of Health, an executive agency of the Commonwealth of Puerto Rico. At all relevant times, Defendants were employed by, or received contracts from, the Commonwealth of Puerto Rico and acted in their official capacities. Furthermore, the alleged discrimination occurred within the scope of Defendants' employment, as all six Plaintiffs worked under the supervision of Defendants.   Further, the individual Defendants were acting under color of state law when the purported discriminatory conduct transpired, as the alleged discrimination was committed by employees of the Commonwealth of Puerto Rico during the course of their employment with the Department of Health. Therefore, Section 1983 is an appropriate avenue to remedy the alleged conduct that supposedly deprived Plaintiffs of their "rights, privileged, and immunities" protected by law.

Although Section 1983 provides an avenue to remedy many deprivations of civil liberties in federal court, it "does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989).   The Eleventh Amendment bars lawsuits for monetary damages against a State in federal court, unless said State has waived its immunity or unless Congress has expressly overridden that immunity. *See* CONST. Amend. XI; *Will*, 491 U.S. at 66

(citing *Welch v. Texas Dept. of Highways and Public Transportation,* 483 U.S. 468, 472-473 (1987) (plurality opinion)); *O'Neill v. Baker,* 210 F.3d 41 (1st Cir. 2000). Furthermore, "neither a state agency nor **a state official acting in his official capacity may be sued for damages in a section 1983 action.**" *Johnson v. Rodriguez,* 943 F.2d 104, 108 (1st Cir. 1991)(emphasis ours). The reasoning follows that a suit against an official actor is a suit against his office, and by default a suit against the state. *See Will,* 491 U.S. at 71; *Brandon v. Holt,* 469 U.S. 464, 471 (1985); *Kentucky v. Graham,* 473 U.S. 159, 165-166 (1985).

Puerto Rico has long been considered a state for Eleventh Amendment purposes. *See Irizarry-Mora v. Univ. of Puerto Rico,* 647 F.3d 9 (1st Cir. 2011); *Metcalf & Eddy, Inc. v. P.R. Aqueduct & Sewer Auth.,* 991 F.2d 935 (1st Cir. 1993). "The Eleventh Amendment bars the recovery of damages in a federal court against the Commonwealth of Puerto Rico, and, by the same token, it bars the recovery of damages in *official capacity* suits brought against Puerto Rico officials where recovery will come from the public fisc." *Culebras Enterprises Corp. v. Rivera Rios,* 813 F.2d 506, 516 (1st Cir. 1987) (citing *Ramirez v. P.R. Fire Service,* 715 F.2d 694, 697 (1st Cir. 1983) and *Kentucky v. Graham,* 473 U.S. 159 (1985)) (emphasis in the original); *Maysonet-Robles v. Cabrero,* 323 F.3d 43 (1st Cir. 2003).

In the instant matter, Plaintiffs concede that they are not seeking monetary damages from the Commonwealth of Puerto Rico nor any

of its employees in their official capacities.[6]  We now proceed to analyze the constitutional violations alleged by Plaintiffs against Defendants in their personal capacities for monetary damages and in their official capacities for prospective injunctive relief.

### a) The First Amendment

The First and Fourteenth Amendments protect the rights of individuals to freely associate with others "for the common advancement of political beliefs and ideas." *Kusper v. Pontikes*, 414 U.S. 51, 57, 58 (1973)("The right to associate with the political party of one's choice is an integral part of this basic constitutional freedom.").

Under the First Amendment, government officials are prohibited from taking an adverse employment action against a public employee because of the employee's political affiliation, unless political loyalty is a legitimate requirement for the position in question. *See Rutan v. Republican Party of Ill.*, 497 U.S. 62, 75-76 (1990); *Branti v. Finkel*, 445 U.S. 507, 516-518 (1980); *Elrod v. Burns*, 427 U.S. 347, 372-73 (1976)(plurality opinion). Subject to the latter exception, government officials cannot discharge public employees simply because of their political affiliations. *See Elrod*, 427 U.S. at 350.

---

[6]  Prospective injunctive relief as an equitable remedy against defendants in their official capacity is not barred by the Eleventh Amendment, pursuant to *Ex Parte Young*, 209 U.S. 123 (1908), to end a "continuing violation of federal law." *Mills v. State of Me.*, 118 F.3d 37, 54 (1st Cir. 1997)(citing *Green v. Mansour*, 474 U.S. 64, 68 (1985)). In *Mills*, the First Circuit stressed that "the doctrine of *Ex parte Young* ... allows plaintiffs to avoid the Eleventh Amendment bar by naming a state officer **in his official capacity** in cases where prospective declaratory and injunctive relief is sought." *Id.* at 53 (emphasis ours). This is of particular relevance in the case at bar, as Plaintiffs seek reinstatement to their positions at the CDT in Adjuntas.

Additionally, "[p]romotions, transfers, and recalls after layoffs based on political affiliation or support are an impermissible infringement on the First Amendment rights of public employees." *Rutan*, 497 U.S. at 75 (rejecting the view that "[o]nly those employment decisions that are the 'substantial equivalent of a dismissal' violate a public employee's rights under the First Amendment.")(citing *Rutan v. Republican Party of Ill.*, 868 F.2d 943, 954-957 (7th Cir. 1989)). The First Amendment serves to protect the freedom of government employees to associate with a political party, limiting the government's rights to interfere with said beliefs, except in the most compelling circumstances. *Id.* at 76.

To succeed on a First Amendment political discrimination claim, a plaintiff must prove: "(1) that the plaintiff and defendant have opposing political affiliations, (2) that the defendant is aware of the plaintiff's affiliation, (3) that an adverse employment action occurred, and (4) that political affiliation was a substantial or motivating factor for the adverse employment action." *Lamboy-Ortiz v. Ortiz-Velez*, 630 F.3d 228, 239 (1st Cir. 2010). In order to survive the motion to dismiss stage, a plaintiff must make a fact specific showing that his political affiliation was a substantial or motivating factor in the employment decision. *See Penalbert-Rosa v. Fortuno-Burset*, 631 F.3d 592, 594 (1st Cir. 2011) (citing *Montfort-Rodríguez v. Rey-Hernández,* 504 F.3d 221, 224-25 (1st Cir. 2007)). Additionally, it is sufficient for plaintiffs to allege that they and defendants are affiliated to different political parties. *See Ocasio-Hernandez*, 640 F.3d at 13.

14

In the instant case, Defendant Rodríguez takes exception with the second and third factors outlined in *Lamboy-Ortiz*, i.e., that she was unaware of Plaintiffs' affiliations to the NPP and that she did not undertake an adverse employment action against them.  We address each argument in turn.

Under the second prong of the inquiry, Plaintiffs must show that Defendant Rodríguez was aware of Plaintiffs' political affiliations to the NPP.  According to the complaint, Plaintiff Pagán-García met with Defendant Rodríguez, Defendant Rivera-Hernández's supervisor, immediately after Plaintiffs' dismissals.  During the meeting, she complained about what had transpired at the CDT in Adjuntas and urged Defendant Rodríguez to immediately reinstate all Plaintiffs to their respective positions.  During the conversation, Defendant Rodríguez was informed that all of the individuals who had been dismissed were affiliated with the NPP and had been replaced with members of the PNP. Defendant Rodríguez failed to remedy the situation, stating instead that she would not do anything about the layoffs because Defendant Rivera-Hernández was an important figure within the PDP.  Accordingly, the Court finds that Plaintiffs have satisfied the second prong of the inquiry, having set forth sufficient factual allegations that, when taken as true under 12(b)(6) standards, demonstrate that Defendant Rodríguez was aware of Plaintiffs' NPP affiliation.

The third prong requires Plaintiffs to show that an adverse employment action occurred as a result of Defendant Rodríguez's conduct. It is well settled that a government official cannot be held liable for the acts of a subordinate under the theory of respondeat

superior under Section 1983. *See Maldonado-Denis v. Castillo Rodríguez*, 23 F.3d 576 (1st Cir. 1994). However, supervisory liability may nevertheless attach if the plaintiff can establish that its constitutional injury resulted from the "direct acts or omissions of the official, or from indirect conduct that amounts to condonation or tacit authorization." *Rodriguez-Garcia v. Miranda-Marin*, 610 F.3d 756, 768 (1st Cir. 2010)(internal citations and quotations omitted). Additionally, the Supreme Court has enunciated that "actions short of dismissal or demotion, such as denials of promotions, transfers and rehires, can constitute actionable adverse employment decisions." *Welch v. Ciampa*, 542 F.3d 927, 936 (1st Cir. 2008)(citing *Rutan*, 497 U.S. at 75).

As to prong three, Defendant Rodríguez argues that she did not play a role in Plaintiffs' dismissal, as she became aware of the facts after the alleged unlawful conduct had occurred. We disagree. When Plaintiff Pagán-García approached Defendant Rodríguez about Plaintiffs' dismissal from the CDT, Defendant Rodríguez was in a position to rehire Plaintiffs, yet failed to do so for reasons that, on their face, appear political in nature. Defendant Rodríguez, as Regional Director at the Department of Health, had the power and obligation to reinstate Plaintiffs to their positions at the CDT in Adjuntas. Failing to do so constituted an adverse employment action.

Accordingly, the Court hereby **DENIES** Defendant Rodríguez's motion to dismiss Plaintiffs' First Amendment claims.

### b) The Fourteenth Amendment

In the case at bar, the Carmona Defendants seek dismissal of Plaintiffs' Due Process Claims, but fail to develop their argument.[7] Defendant Rodríguez also seeks dismissal of Plaintiffs' Due Process Claims, arguing that Plaintiffs were not state employees and, hence, did not have a property interest in their positions. Conversely, Plaintiffs aver that the right to hold private employment free from unreasonable government interference was violated by Defendant Rodríguez and the rest of her staff at the CDT when they ordered the Private Contractors to discharge Plaintiffs. Additionally, Plaintiffs aver that the Carmona Defendants violated the Fourteenth Amendment by assisting the PDP administration in achieving their unconstitutional objective of removing Plaintiffs from their position solely on the basis of their political affiliations.

"The right to hold private employment and to pursue one's chosen profession free from unreasonable government interference is encapsulated in the liberty concept of the Due Process Clause." *Mead v. Independence Ass'n*, 684 F.3d 226, 232 (1st Cir. 2012)(citing *Greene v. McElroy*, 360 U.S. 474, 492, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959); *Truax v. Raich*, 239 U.S. 33, 38, 36 S.Ct. 7, 60 L.Ed. 131 (1915)). The right to hold private employment free from unreasonable government interference is implicated when the interference is direct and unambiguous, such as "when a city official demands that a restaurant

---

[7] The Carmona Defendants simply joined Genesis Security Services, Inc.'s motion to dismiss. The argument made therein against the applicability of the Fourteenth Amendment does not apply to the Carmona Defendants, as Genesis did not discharge its employee, Plaintiff Irizarry-Hernández, but simply transferred her to Ponce. In contrast, the Carmona Defendants discharged Plaintiffs Ramos-Torres and Santiago-Beltrán.

fire its bartender...."  *Id.* (citing *Helvey v. City of Maplewood*, 154 F.3d 841, 843–44 (8th Cir. 1998)("This right arises when government officials, through exercise of their regulatory authority over an employer, demand the discharge of an employee.")).

In the case at bar, Plaintiffs aver that the government Defendants, especially Defendant Rivera-Hernández, took advantage of their contractual relationship with the Private Contractors and ordered their dismissals on the basis of their political affiliations. Plaintiffs contend that the Private Contracts fired and/or transferred them for fear of economic retribution regarding their service contracts.  Hence, the Private Contractors allegedly assisted the PDP administration in discriminating against Plaintiffs in order to maintain their contracts with the Puerto Rico Department of Health, as admitted by some of the Private Contractors.  The facts show that Commonwealth of Puerto Rico employees directly interfered with Plaintiffs' rights to private employment free from unreasonable government interference.  They also demonstrate that the Carmona Defendants were complicit in depriving Plaintiffs of their Substantive Due Process rights.

Hence, the Court hereby **DENIES** the Carmona Defendants and Defendant Rodríguez's motions to dismiss Plaintiffs' Due Process Claims.

### c) Law 80- Wrongful Discharge Act

Puerto Rico's Wrongful Discharge Act ("Law 80"), 29 L.P.R.A. § 185, *et seq.*, requires employers to compensate employees who are discharged without "just cause."  A discharge made by "the mere whim

of the employer" or without any of the defined causes relating "to the proper and normal operation" of the employer shall not be construed as "just cause." *Id.*

Law 80 entitles employees discharged without just cause to a form of severance pay known as "mesada," which is calculated according to a formula based on the employee's salary and years of service. 29 L.P.R.A. §185g; *Otero-Burgos v. Inter American University*, 558 F.3d 1, 7-9 (1st Cir. 2009). However, if an employee is discharged with just cause, the employer will not be liable for payment of the severance under Law 80. 29 L.P.R.A. §§ 185a-185b.

Law 80 establishes a presumption of unjust dismissal against employers. *See Varela Teron*, *supra* (citing *Diaz v. Wyndham Hotel Corp.*, 155 D.P.R. 364, 378 (2001); *Arce v. Martínez*, 146 D.P.R. 215, 230-31 (1998); *Delgado Zayas v. Hosp. Interamericano*, 137 D.P.R. 643 (1994)). Under Law 80, if an employee brings a claim for wrongful discharge, the employer has the burden of proving that the dismissal was justified. *See Varela Teron v. Banco Santander de Puerto Rico*, 257 F.Supp.2d 454, 464-65 (D.P.R. 2003). Further, "[i]n every action instituted by an employee claiming the benefits [of Law 80], the employer is bound to plead in his answer to the complaint the facts that led to the dismissal, and to prove that it was justified...." 29 L.P.R.A. §185k. Thus, "once an employee proves that he was discharged and alleges that his dismissal was unjustified, his employer must establish by a preponderance of the evidence that the discharge was for good cause [as defined and limited under the statute]." *Hoyos v. Telecorp Communications, Inc.*, 488 F.3d 1, 6 (1st Cir. 2007); *see also*

*Alvarez-Fonseca v. Pepsi Cola of P.R. Bottling Co.*, 152 F.3d 17, 28 (1st Cir. 1998).

In the instant case, the Carmona Defendants moved to dismiss Plaintiffs' Law 80 claims without any elaboration. As highlighted above, the facts alleged in the complaint show that Plaintiffs Ramos-Torres and Santiago-Beltran were terminated by the Carmona Defendants for politically oriented reasons at Defendant Rivera-Hernández's behest. Absent evidence demonstrating that Plaintiffs Ramos-Torres and Santiago-Beltran were terminated for just cause, the Court cannot dismiss their Law 80 claims against the Carmona Defendants. Accordingly, the Carmona Defendants' request for dismissal of Plaintiffs' Law 80 claims is hereby **DENIED**.

### d) Qualified Immunity

Finally, Defendant Rodríguez asserts that she is entitled to qualified immunity for her actions. *See* Docket No. 48. The qualified immunity doctrine is known to protect public officials from "the specter of damages liability for judgment calls made in a legally uncertain environment." *Ryder v. United States*, 515 U.S. 177, 185 (1995). It "provides defendant public officials immunity from suit and not a mere defense to liability." *Maldonado v. Fontanes*, 568 F.3d 263, 268 (1st Cir. 2009). Under this doctrine, entitlement to immunity is warranted if there is no violation of "clearly established statutory or constitutional rights of which a reasonable person would have known." *Mitchell v. Forsyth*, 472 U.S. 511, 524 (1985) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

A two-part test shapes the qualified immunity inquiry. A court should deny a defendant qualified immunity if: (1) the facts a plaintiff has either alleged or shown establish a violation of a constitutional right; and (2) the constitutional right at issue was *clearly established* at the time of the defendant's alleged violation. *Cortes-Reyes v. Salas-Quintana*, 608 F.3d 41, 51 (1st Cir. 2010). Law is *considered clearly established* "either if courts have previously ruled that materially similar conduct was unconstitutional, or if 'a general constitutional rule already identified in the decisional law [applies] with obvious clarity to the specific conduct' at issue." *Guillemard-Ginorio v. Contreras-Gomez*, 585 F.3d 508, 527 (1st Cir. 2009); *see also Jennings v. Jones*, 499 F.3d 2, 16 (1st Cir. 2007). As to clearly established law concerning First Amendment claims, the First Circuit has indicated that "the clearly established law both in this circuit and beyond precludes government officials from discharging civil or 'career' employees for politically-motivated reasons." *Acevedo-Garcia v. Monroig*, 351 F.3d 547, 564 (1st Cir. 2003).

Treating Plaintiffs' allegations as true, the Court denies Defendant Rodríguez's *Motion to Dismiss* (Docket No. 48) on the basis of qualified immunity. First, Plaintiffs allegations, if proven at trial, clearly establish a constitutional violation, i.e., the right to be free from discrimination on the basis of political beliefs. Second, these rights were, without a doubt, clearly established at the time of the alleged discriminatory events pursuant to the cases cited herein, particularly as to a government entity ordering a termination

or doing nothing when a plaintiff's constitutional rights were trampled. Accordingly, Defendant Rodríguez is not entitled to qualified immunity.

### IV. CONCLUSION

For the aforementioned reasons, the Court hereby **DENIES** Defendant Rodríguez's *Motion to Dismiss* (Docket No. 48). Additionally, the Carmona Defendants' request for dismissal (Docket No. 77) is hereby **GRANTED IN PART AND DENIED IN PART.** Specifically, Plaintiffs' Due Process and Law 80 claims against the Carmona Defendants remain viable causes of action. However, at Plaintiffs' request, all claims under Articles 1802 and 1803 against the Carmona Defendants are hereby **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 27th day of August, 2015.

s/ Daniel R. Dominguez

DANIEL R. DOMINGUEZ
U.S. DISTRICT JUDGE